IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ANTHONY QUINN GIBSON**                                       **PLAINTIFF**

VS.                                                            CAUSE NO. 3:23-cv-298-DPJ-FKB

**VITALCORE HEALTH STRATEGIES, LLC**                           **DEFENDANT**

**JURY TRIAL DEMANDED**

## COMPLAINT

This is an action to recover actual and punitive damages for discharge because Plaintiff opposed sex discrimination and because Plaintiff refused to participate in illegal activity. The following facts support the action:

1.

Plaintiff ANTHONY QUINN GIBSON is an adult resident citizen of 619 Chambord Drive, Brandon, Mississippi 39042.

2.

Defendant VITALCORE HEALTH STRATEGIES, LLC is a Kansas corporation doing business in the State of Mississippi. Defendant Vitalcore may be served with process by service upon its registered agent, C T Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232. Defendant is in the business of providing healthcare to prisoners. At all relevant times, Defendant had a contract to provide medical care for prisoners at the Central Mississippi

Correctional Facility in Rankin County Mississippi, and at the East Mississippi Correctional Facility, which are prisons under the umbrella of the State of Mississippi.

3.

This Court has federal question jurisdiction under 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. § 1343. This action is authorized by 42 U.S.C. § 1983. This Court has supplemental jurisdiction over Plaintiff's state law claims. This action arises, in substantial part, in Rankin County, Mississippi, in the Southern District of Mississippi. Thus, venue is proper in this Court.

4.

Plaintiff began employment with Defendant in approximately August 2020. At the time of Plaintiff's discharge, Plaintiff was working as Health Services Administrator ("HSA").

5.

Plaintiff was initially assigned to the East Mississippi Correctional Facility ("EMCF"). On March 15, 2021, Plaintiff was transferred for the purpose of helping to perform an audit of medical records to the Central Mississippi Correctional Facility ("CMCF"). The audit was important since the United States Department of Justice was in the process of investigating deaths, suicides, and murders in the Mississippi prison system, including in the prisons operated by Defendant. The United States Department of Justice condemned many aspects of the facilities of the Mississippi prison system, including, but not limited to, the abysmal medical care being afforded prisoners.

6.

Shortly after being reassigned to CMCF, Plaintiff was sexually harassed by Paul Millette, the Defendant's Vice President of Operations for all prisons in the State of Mississippi. Millette slapped

Plaintiff on his rear. Plaintiff documented this sex-based incident with an email and a text message. The email appeared to minimize the seriousness of the incident, but only because Plaintiff feared that an confrontational approach would cause him to lose his job. Plaintiff did make it clear, however, that the incident made him feel degraded. Plaintiff was especially degraded because earlier on the same day, Kathy Hogue, Director of Operations, had shown Plaintiff an image of an inmate's penis, which worried Plaintiff to the extent Plaintiff could not get the gross image off his mind. Plaintiff's complaint about the sex-based harassment constituted opposition to what Plaintiff reasonably believed to be sexual harassment

7.

On March 29, 2021, the Defendant's Chief Executive Officer, Viola Riggin, set up a luncheon with Plaintiff to discuss Plaintiff's complaint about the sexual harassment. Riggin claimed that Millette had stated he could not "recall" touching Plaintiff, and could not "recall" slapping Plaintiff on his rear. Riggin said, however, that Millette apologized if he had done so, explaining that he sometimes "gets carried away in fun a lot." Riggin informed Plaintiff she was going to send Millette to a sexual harassment training.

8.

Within days after Plaintiff opposed the sexual harassment by Millette, Plaintiff began to be shunned by regional and corporate employees with whom he had had a previously good relationship. Paul Millette, the person who had slapped Plaintiff on his rear, required Plaintiff to make multiple requests before he would honor Plaintiff's request for needed medical supplies. Nikki Gilliland, who was also present at the luncheon where the sexual harassment incident was discussed, also would not timely approve Plaintiff's request for medical supplies for prisoners. Plaintiff and other

employees had to buy medical supplies out of their own pockets in order to save lives and treat serious illnesses of prisoners. This denial of medical supplies was a result of Plaintiff's having opposed the sexual harassment by Millette.

9.

Subordinates of Millette, including Dr. Raman Singh, Senior Vice President of Health Care Services, Amy Hodgson, Regional Director of Behavioral Services, Diamonisha Brown, Regional Recruiter, and Nikki Gilliland, Corporate President of Administration, also ignored Plaintiff's work-related requests. Furthermore, corporate human resources employees Shannon Visor and Jamie McLaughlin would not respond to Plaintiff's work-related calls and emails. Before Plaintiff reported the act of sexual harassment, and before he refused to falsify medical records, Plaintiff had excellent relationships with these persons.

10.

Plaintiff's being ignored came in the midst of the medical audit at CMCF. Plaintiff examined the mandatory information that was required to be contained in the prisoners' medical files. Plaintiff noted that there were sixteen (16) mandatory files missing required documentation for the ACA audit. The mandatory files which lacked required medical documentation included files which were supposed to document chronic illness, files regarding suicide prevention, files recording the health records of prisoners, and files documenting staffing, along with other healthcare documents needed to make sure healthcare services were not hindered. Medical files of several inmates were missing altogether.

11.

Plaintiff informed CEO Viola Riggin and Dr. Singh about the missing mandatory information in the medical files. Dr. Singh stated, in the presence of Viola Riggin, to "do whatever it takes to make sure that CMCF passes the upcoming audit." Dr. Singh directed that Plaintiff create information to put in the medical files. Dr. Singh stated that "the Department of Justice is investigating," so the audited files should appear to be complete and correct. Plaintiff responded that he would not create, in other words, would not fabricate, the necessary documentation for the medical files because this would be illegal. Plaintiff's refusal to falsify the medical records occurred between April 7, 2021 and April 9, 2021. Hogue volunteered to herself create the necessary health documents to pass the upcoming audit on or about April 26, 2021.

12.

On or about April 26, 2021, Dr. Singh and Chief of Staff, Chasity Wyatt, directed that a job description be created for health services administrators, which would require the health service administrators to be nurses. Although Plaintiff has master's degrees in health-related fields, Plaintiff is not a nurse. None of the duties of a healthcare administrator relate to nursing or providing medical care. In its inventory, Defendant did not even have among its documents any document which described a healthcare administrator's position as requiring a nursing degree. Wyatt obtained such a job description from another healthcare provider, Centurion, and tweaked that description in order to create a job description for a healthcare administrator which would include the requirement that one be a registered nurse in order to have a job as an HSA. To require that Plaintiff's position as HSA be filled by a registered nurse was a decision made only a few days after Plaintiff had refused to falsify business records by creating false healthcare files. Also, on April 26, 2021, Dr. Singh

removed Plaintiff from the CMCF facility and sent him back to EMCF. At EMCF, Plaintiff's superior employees refused to communicate with him.

13.

On June 28, 2021, Chief of Staff, Chasity Wyatt, sent out a mass email to all leadership, creating several job descriptions for Vitalcore positions. These job descriptions were copied from Centurion. While other job descriptions were also changed, the position of HSA was changed so as to require the HSA to be a registered nurse because Defendant wanted to come up with a pretextual reason to be rid of Plaintiff and possibly also to be rid of Plaintiff's mother-in-law, who was an HSA at Mississippi State Penitentiary, and who was also complaining about horrible medical care at that facility, including the fact that one of the physicians was a drug addict.

14.

On August 26, 2021, Kathy Hogue, Director of Operations, and Dr. Singh, Vice President, sent an email recognizing many employees for passing the audit. Plaintiff was not recognized since he had refused to create or fabricate files so as to pass the audit.

15.

Largely because of the unconstitutional, inadequate medical care being given prisoners which did not meet minimal standards of humanity, and during the spring of 2021, there was a rash of suicides and murders in the correctional facilities throughout Mississippi, including the facilities owned by Defendant. On approximately December 20, 2021, Dr. Singh accused Plaintiff of not informing him of a particular suicide at EMCF. Dr. Singh knew at the time that it was the site medical director, Dr. Arnold, who would first know about the suicide, and Dr. Arnold had the responsibility to notify his superior, Dr. Singh, Vice President. Plaintiff performed his job correctly

by immediately reporting the suicide to his superior, Kathy Hogue, who was made Vice President after the Millette sexual harassment. It was Dr. Singh's obvious intent to use the alleged failure to report the suicide to Dr. Singh as "pretextual poor job performance by Plaintiff" so as to justify firing him.

16.

On January 3, 2023, Chief Executive Officer Viola Riggins told Plaintiff that since the HSA position now required a registered nurse, Plaintiff's employment was terminated.

17.

Plaintiff was not offered any other employment position, although another employee, who was reportedly displaced by the new job descriptions, Gwendolyn Bush, was moved to a clerical position at an annual salary of over $100,000.00. Plaintiff was not offered any alternative employment.

18.

The change in the responsibility of the HSA position, so the position would require one be a registered nurse was made for the purpose of getting rid of Plaintiff, and also possibly for the position of getting rid of Plaintiff's mother-in-law, who worked as an HSA at a different facility, and had complained about the lack of medical care being afforded to prisoners and about a medical doctor who was a drug addict.

19.

Plaintiff has suffered mental anxiety and stress and lost income as a proximate result of his discharge.

20.

Defendant is liable to Plaintiff as follows:

A.  Defendant is liable to Plaintiff because Defendant, through its agents, discriminated against Plaintiff because he had opposed sex discrimination by reporting the incident in which Paul Millette slapped him on his posterior in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a); and

B.  Defendant violated the *McArn* Doctrine because it discharged Plaintiff in violation of public policy because he refused to falsify business records, which is a felony under Mississippi law. Further, Plaintiff was discharged because he refused to document records which would have falsely shown that constitutionally adequate medical care was being afforded, and this was not the case. This falsification of business records would be a felony under MISS. CODE ANN. § 97-7-10.

21.

Plaintiff has filed an EEOC charge, attached hereto as Exhibit "A," and received the right to sue letter, attached hereto as Exhibit "B." The allegations in the EEOC charge are incorporated herein by reference.

**REQUEST FOR RELIEF**

Plaintiff requests actual and punitive damages in an amount to be determined by a jury, reinstatement, and reasonable attorneys' fees and costs.

RESPECTFULLY SUBMITTED, this the 11th day of May, 2023.

                                              ANTHONY QUINN GIBSON, Plaintiff

By:   */s/ JIM WAIDE*
      Jim Waide, MS Bar No. 6857
      waide@waidelaw.com
      WAIDE & ASSOCIATES, P.A.
      332 North Spring Street
      Tupelo, MS 38804-3955
      Post Office Box 1357
      Tupelo, MS 38802-1357
      (662) 842-7324 / Telephone
      (662) 842-8056 / Facsimile

      ATTORNEY FOR PLAINTIFF

STATE OF MISSISSIPPI

COUNTY OF ___Rankin___

PERSONALLY came and appeared before me, the undersigned authority in and for the aforesaid jurisdiction, the within named ANTHONY QUINN GIBSON, who, after being first duly sworn, states under oath that the facts contained in the above and foregoing COMPLAINT are true and correct as stated therein.

_____
ANTHONY QUINN GIBSON

GIVEN under my hand and official seal of office on this the 30th day of March, 2023.



(SEAL)

_____
NOTARY PUBLIC

LARRY SWALES
CHANCERY CLERK
BY _____ D.C.

My Commission Expires: Commission Expires Jan. 8, 2024